UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TAC-CRITICAL SYSTEMS, INC.,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**INTEGRATED FACILITY SYSTEMS, INC.,** *et al.*,<br><br>    **Defendants.** | Civil Action No. 09-1512 (JEB) |

## MEMORANDUM OPINION AND ORDER

Plaintiff TAC-Critical Systems, Inc. has brought this diversity action for breach of contract against Defendants Integrated Facility Systems, Inc. and its sole owner and officer, Mohan Jacob. IFS is now a defunct company that closed its doors in 2009. To recover the $239,666.04 in damages it seeks on its breach-of-contract claim, Plaintiff asserts a veil-piercing theory to hold Jacob personally liable for IFS's corporate debts. Jacob now moves for summary judgment, arguing that, even if IFS did breach the contract, TAC cannot, as a matter of law, pierce IFS's corporate veil and recover from him personally. As the Court disagrees, it will deny the Motion.[1]

### I.   Background

Both TAC and IFS are contracting firms. In around 2005, they entered into an agreement to perform work on "three federal facilities in the District of Columbia." Compl., ¶ 6. IFS was to be the general contractor, and TAC was to serve as a subcontractor. The arrangement was

---

[1] The court has reviewed Defendant's Motion for Summary Judgment, Plaintiff's Opposition, Defendant's Reply, Plaintiff's Surreply on Delaware Law, and Defendant's Response.

1

made contingent on IFS's being awarded the prime contract from the federal government, which it ultimately obtained. Id., ¶¶ 6-7.

Shortly after starting work on the federal contracts, the relationship between IFS and TAC began to sour. Despite the fact that IFS was the general contractor, Jacob felt that "TAC decided to run th[e] project on [its] own[,] . . . disregarding that [IFS] was the GC." Pl. Opp., Exh. 1 (Deposition of Mohan Jacob) at 62. Frustrated by the situation, Jacob became "[un]happy with the whole process right through the contract" and generally believed that he had "lost control of the contract . . . ." Id. Animosity also developed between the parties with respect to the value of each company's work on the relevant projects. While they "never had any problem with the scope of work," the parties were not in accord regarding how much TAC would receive as payment. Id. at 66. Jacob avers that IFS paid TAC $840,000 for its work on the facilities and kept only $128,000 for itself. Id. at 79-80. He further contends that, because of TAC's alleged conduct, IFS actually lost nearly $75,000 in unrecouped expenses on the federal projects. Id. at 69. Other than a $15,000 debt that Jacobs acknowledges that IFS owes Plaintiff, see id. at 73, 78, 106, he asserts that TAC has been fully paid for its work on all pertinent contracts. Id. at 105-06.

Not surprisingly, TAC takes a different view of their contractual dispute. In filing this breach-of-contract action against both IFS and Jacob, TAC alleges that IFS owes it almost $240,000. Compl., ¶ 14. Plaintiff additionally advances a veil-piercing theory to hold Jacob personally liable for these contractual damages.

Jacob has now filed a Motion for Summary Judgment under FED. R. CIV. P. 56(a), arguing that no genuine issues of material fact remain with respect to his personal liability for the contract.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C.Cir.1987). "Until a movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence." Gray v. Greyhound Lines, East, 545 F.2d 169, 174 (D.C. Cir. 1976). When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849–50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).

The nonmoving party's opposition, however, must consist of more than mere unsupported

allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249–50; see Scott, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III.   Analysis**

    A.  Choice of Law

Before addressing the merits of Jacob's Motion, the Court must first sort through a complicated choice-of-law question. Because the case concerns – albeit indirectly – contracts with the federal government, the Court must determine whether federal or state common law applies to Plaintiff's veil-piercing theory. If federal law controls, the Court must apply that veil-piercing common law. If state law governs, however, the Court must then decide which of three jurisdictions' common law is applicable here. The State of Delaware, the Commonwealth of Virginia, and the District of Columbia each has an ostensible interest in having its law applied to this dispute. Delaware is the state in which IFS is incorporated. IFS's principal place of business is located in Virginia, and the Commonwealth is also where the relevant contracts were executed. Finally, the District of Columbia is the jurisdiction in which this action was brought, where the relevant contracts were performed, and where they were allegedly breached. The

Court finds that District of Columbia veil-piercing law ultimately applies to this case.

The question of which jurisdiction's law applies where a party to a diversity case seeks to pierce the corporate veil can be especially vexing where, as here, the facts present both vertical – *i.e.*, should federal or state law apply? -- and horizontal – *i.e.*, which state's law should apply? -- choice-of-law questions.  See Roadway Package System, Inc. v. Kayser, 257 F.3d 287, 293-94 (3d Cir. 2001) (explaining distinction between vertical and horizontal), abrogated on other grounds by Hall Street Assoc., L.L.C., v. Mattel, Inc., 552 U.S. 576 (2008).  Where a veil-piercing case is brought under a federal statute, "[t]here is significant disagreement . . . over whether . . . courts should borrow state law, or instead apply a federal common law of veil piercing."  United States v. Best Foods, 524 U.S. 51, 63 n.9 (1998); see also U.S. Through Small Business Admin. v. Pena, 731 F.2d 8, 12 (D.C. Cir. 1984) (addressing the veil-piercing choice-of-law quandary).  Diversity cases "involv[ing] situations in which [a] federal interest [is] implicated by the decision whether to pierce the corporate veil" present the same obstacle.  Id.; see also United States ex rel. Siewick v. Jamieson Science and Engineering, Inc., 191 F. Supp. 2d 17, 20 (D.D.C. 2002) ("[F]ederal common law governing the veil-piercing question is applicable to [diversity] cases where 'some federal interest is implicated by the veil-piercing inquiry.'") (quoting Pena, 731 F.2d at 12) (internal citation omitted); Note, Piercing the Corporate Veil: The Alter Ego Doctrine Under Federal Common Law, 95 Harv. L. Rev. 853 (1982) (discussing, *inter alia*, diversity cases where courts have applied federal veil-piercing common law).

In veil-piercing cases where no federal interest is implicated, the majority view applies the District of Columbia's choice-of-law principles, see Pena, 731 F.2d at 11-12; Amore ex rel. Estates of Amore v. Accor, 529 F. Supp. 2d 85, 93 (D.D.C. 2008), which typically underpin the

analysis in diversity cases. See Nationwide Mutual Ins. Co. v. Richardson, 270 F.3d 948, 953 (D.C. Cir. 2001) ("'A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state (or district or territory)[.]'" (quoting Liberty Mut. Ins. Co. v. Travelers Indem Co., 78 F.3d 639, 642 (D.C. Cir.1996) (citation omitted)).

Another approach looks to the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 307 (1971), which has been interpreted to abrogate general choice-of-law principles in veil-piercing cases. The rule of § 307 states that "[t]he local law of the state of incorporation will be applied to determine" whether piercing the corporate veil is justified. Some courts have been content to end the inquiry there. See Moran v. Harrison, 91 F.2d 310 (D.C. Cir. 1937) ("[T]he existence and extent of the liability of a stockholder for . . . the debts of a corporation is determined by the law of the state of incorporation.") (footnote omitted); S.E.C. v. Levine, 671 F. Supp. 2d 14, 33 (D.D.C. 2009) ("Because [the corporation] is incorporated in Nevada, Nevada law controls the alter ego analysis.") (citing RESTATEMENT § 307).

The only relevant decisions relying on § 307's rule, however, are Levine and Moran; neither case cites binding authority to support the RESTATEMENT's proposition, nor have any other D.C. federal courts sitting in diversity jurisdiction subscribed to their rationale. Such an approach has, moreover, been harshly criticized in the academic literature and is arguably not even based on a proper reading of § 307. See Gregory S. Crespi, Choice of Law in Veil-Piercing Litigation: Why Courts Should Disregard the Internal Affairs Rule and Embrace General Choice-of-Law Principles, 64 N.Y.U. Ann. Surv. Am. L. 85 (2008-2009). If state, as opposed to federal, veil-piercing law governs this case, the Court thus believes it appropriate to apply District of Columbia's choice-of-law rules to determine the particular state.

Under those principles, courts conduct a "'governmental interest analysis,'" in which

6

they "evaluate the governmental policies underlying the . . . conflicting laws[] and determine which jurisdiction's policies would be most advanced by having its law applied to the facts of the case under review." Hartley v. Dombrowski, 744 F. Supp. 2d 328, 336 (D.D.C. 2010) (quoting Bledsoe, 849 F.2d at 641). "In applying this balancing test, the court considers various factors such as the place of contracting, the place of contract negotiation, the place [of] performance of the contract, the location of the subject matter of the contract, the place of incorporation and the parties' place of business." Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 51 (D.D.C. 2002) (citing Koro Co. v. Brystol-Myers Co., 568 F. Supp. 280, 286 (D.D.C. 1983)).

Under such an analysis, District of Columbia law must be applied to Plaintiff's veil-piercing theory. The District is the place where the relevant contracts were performed, the jurisdiction that would be most affected by performance, and the place where the contracts were allegedly breached. "As th[e D.C. Circuit] has previously stated, '[t]he state where the defendant's [alleged] conduct occur[red] has the dominant interest in regulating it . . . .'" Bledsoe, 849 F.2d at 643 (quoting Biscoe v. Arlington County, 738 F.2d 1352, 1361 (D.C. Cir. 1984)). The Court thus concludes, in response to the horizontal choice-of-law question, that District of Columbia veil-piercing law is applicable in this case.

The same result is required as to the vertical choice-of-law issue. Some courts suggest that "'the choice between state and federal [veil-piercing] law may in many cases present questions of academic interest, but little practical significance.'" Best Foods, 524 U.S. at 63 n.9 (quoting In re Acushnet River & New Bedford Harbor Proceedings, 675 F. Supp. 22, 33 (D. Mass. 1987)) (alteration in original). This is one such case. Because "the difference between federal alter ego law and D.C. alter ego law is immaterial," McWilliams Ballard, Inc. v. Broadway Management Co., 636 F. Supp. 2d 1, 7-8 (D.D.C. 2009) (footnote omitted), it is

unnecessary to decide the vertical choice-of-law question. More specifically, the federal common-law test for piercing the corporate veil "proceeds in two steps: '(1) is there such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?'" United States ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F. Supp. 2d 25, 60 (D.D.C. 2007) (quoting Labadie Coal Co. v. Black, 672 F.2d, 92, 97 (D.C. Cir. 1982)). The substantively identical District of Columbia veil-piercing standard is set out in Part III.B.,*infra*.

The Court may thus proceed to apply District of Columbia law without affecting the outcome even if the circumstances would require application of federal law.

B. Piercing the Corporate Veil

The gravamen of the dispute in this Motion is whether Jacob is, as a matter of law, shielded from personal liability for IFS's contractual debts to TAC. In arguing that it can pierce IFS's corporate veil and recover from Jacob personally, Plaintiff alleges that "Jacob has commingled his personal funds and IFS funds and has used IFS to pay for his personal obligations," Compl., ¶ 23, and also that "Jacob used and continues to use IFS to defraud TAC" and "others, including the United States Government." Id., ¶¶ 25-26. Plaintiff furthermore avers that "IFS was and is 'void' in its state of incorporation and was and is in revoked status in the District of Columbia." Id., ¶ 20. Jacob contends the undisputed evidence is to the contrary.

It should be preliminarily noted that both parties misapprehend some details regarding the doctrine of veil-piercing. Counts II and III of Plaintiff's Complaint allege, respectively, "Personal Liability for Acts of Void and Forfeited Corporation" and "Insider Reverse Piercing." Id. at 3-4. Both sides routinely refer to these counts as discrete claims in their submissions.

They are not. Plaintiff's sole cause of action in this case is for common-law breach of contract; its assertions concerning veil-piercing merely comprise a legal theory by which it hopes to extend liability – on its underlying breach-of-contract claim – beyond IFS as a corporate entity to Jacob as an individual. See Gallagher v. McClure Bintliff, 740 S.W.2d 118, 119 (Tex. App. 1987) ("An attempt to pierce the corporate veil, in and of itself, is not a cause of action but rather is a means of imposing liability on an underlying cause of action such as a tort or a breach of contract."); 1 William Meade Fletcher *et al.*, Fletcher Cyclopedia of the Law of Corporations § 41.10 (perm. ed., rev. vol. 2011) ("the alter ego theory is not in itself a claim for substantive relief, but rather is procedural"; it "creates no cause of action [because it] is a means of imposing liability on an underlying cause of action") (footnotes omitted); see also Franklin A. Gevurts, Piercing Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil, 76 Or. L. Rev. 853, 854-55 (clarifying that "[p]iercing is an equitable remedy," not a cause of action).

Plaintiff, moreover, most certainly does not wish to "inside reverse pierce" IFS's corporate veil. This is because such a feat is not possible here. Reverse veil-piercing – sometimes superfluously referred to as inside reverse piercing – typically "involves a corporate insider . . . attempting to pierce the corporate veil from within so that the corporate entity and the individual will be considered one and the same." 1 Fletcher § 41.70. Plaintiff's theory, therefore, is one of ordinary veil-piercing in which an outsider asks a court to disregard a corporate entity and impose liability on an individual owner. See id. § 41.10.

Jacob also misstates the test for veil-piercing under District of Columbia law. He argues that Plaintiff's veil-piercing theory is a "fraud-based claim," which has failed to satisfy FED. R. CIV. P. 9(b)'s heightened pleading standard for fraud. Def. Resp. to Pl. Surreply at 9; see also

Mot. at 4. As noted, however, veil-piercing is not a "claim." Even if it were, it requires neither allegations nor proof of fraud. It would certainly be to Defendant's benefit if courts still required a showing that an entity "use[d] the corporate form to perpetrate fraud or wrong," Mot. at 8 (citing Vuitch v. Furr, 482 A.2d 811, 815 (D.C. 1984), but that is no longer the case.

Indeed, this is the exact point the Court in Vuitch made when it explicitly discarded the restrictive standard formerly applied in cases such as McAuliffe v. C. & K. Builders, 142 A.2d 605 (D.C. 1958). See 482 A.2d at 815 ("More recently, the court has held that considerations of justice and equity can justify piercing the corporate veil and has rejected the contention that . . . there must be a showing of fraud . . . ."). The core thrust of Vuitch is to explain how the veil-piercing principle has evolved into a doctrine of equity under which "the decision to pierce will be influenced by [many] considerations." Id. at 816. The existence or nonexistence of fraud is, of course, relevant to the inquiry, but "the factor [that] predominates will vary in each case." Id.

Properly enunciated, the D.C. veil-piercing doctrine requires "(1) unity of ownership and interest [between the entities], and (2) [either] use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it." Estate of Raleigh v. Mitchell, 947 A.2d 464, 470 (D.C. 2008) (quoting Bingham v. Goldberg. Marchesano. Kohlman. Inc., 637 A.2d 81, 93 (D.C. 1994) (citation omitted) (internal quotation marks omitted)). A commonly referenced, though not exhaustive, list of factors for determining when veil-piercing is appropriate includes "'(1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled . . . , (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect [an entity] from the claims of creditors.'" Id. at 470-71. Far from the rigid doctrine Jacob intimates, "[t]he ultimate principle

10

[of veil piercing] is one permitting its use to avoid injustice." United States v. Andrews, 146 F.3d 933, 940 (D.C. Cir. 1998) (internal quotation marks omitted).

Under the appropriate veil-piercing test, Jacob has not met his burden on summary judgment. Although the precise dates involved are unclear, IFS's good corporate standing and its certificate to conduct business in the District of Columbia have, during certain periods, been revoked. See Opp., Exh. 2 (showing IFS's D.C. registration status as "revoked"); see also Mot., Exh. 3 (Declaration of Mohan Jacob), ¶ 5 (acknowledging that he "allowed [IFS's] corporate status to lapse" in Delaware). If IFS was operating without either or both of these authorizations during the period in which its contracts with TAC were executed and performed, this would show that corporate formalities were being disregarded.

It should nevertheless be noted that the absence of only the D.C. Certificate of Authority during the relevant period would not be sufficient in itself to pierce IFS's corporate veil: "Despite its lack of a certificate of authority from D.C., a foreign corporation remains in existence and can continue to rely on its corporate form to protect its officers from personal liability for corporate debt." BDC Capital Properties, L.L.C. v. Trinh, 307 F. Supp. 2d 12, 14-15 (D.D.C. 2004) (citing A. Tasker, Inc. v. Amsellem, 315 A.2d 178, 180 (D.C. 1974)). The circumstances leading to the revocation of IFS's certificate of authority, however, may well be relevant as to veil-piercing.

It is furthermore uncertain whether Jacob disregarded other corporate formalities in his management of IFS. This is so because he alleges that virtually all documents germane to the inquiry were either "thrown away" during "one spring cleaning," see Jacob Dep. at 16, or have been "damaged," id. at 29, when they "got rained on" and "have been thrown out because [they] were] completely covered with water." Id. at 15-16. Likewise murky is whether Jacob's

11

decision to file all of IFS's paperwork in "boxes in an outside area . . . under a porch" itself constitutes an instance of disregarding corporate formalities.

It is also notable that, according to Jacob himself, he "was the only one in charge of all the activities" of IFS.  Id. at 8.  He was the president of the company, the only officer, and there was only one other employee.  Id. at 8-9.  All of these facts surrounding IFS's corporate status and Jacob's handling of its records and affairs, when considered jointly, raise genuine issues of material fact concerning veil-piercing that cannot appropriately be resolved on this Motion.

**IV.   Conclusion**

As a dispute of material fact exists on whether Plaintiff can pierce IFS's corporate veil and hold Jacob personally liable, the Court ORDERS that:

1. Jacob's Motion for Summary Judgment is DENIED; and

2. The parties shall appear for a status hearing in Courtroom 19 on September 14, 2011, at 10:30 a.m..

**SO ORDERED**

                                          /s/ *James E. Boasberg*
                                          JAMES E. BOASBERG
                                          United States District Judge

Date:  August 24, 2011